Mark Alan OBERG, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00421–CR.

Court of Appeals of Texas, El Paso.

Dec. 22, 1994.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

Before BARAJAS, C.J., and KOEHLER and McCOLLUM, JJ.

## *OPINION*

McCOLLUM, Justice.

Appellant, Mark Alan Oberg, was charged with possession of a controlled substance, cocaine. The jury found Appellant guilty and assessed punishment at two years in the Texas Department of Criminal Justice. We affirm.

### *SUMMARY OF THE EVIDENCE*

On December 8, 1991, Randall Hawkins, a police officer for the city of El Paso, saw Appellant driving a van with a faded dealer tag. Hawkins believed the tag was expired due to its faded condition and the fact that they are only good for twenty days. Hawkins made a U-turn and activated his lights. Hawkins followed Appellant's car for two or three blocks with Appellant making a couple of turns. Appellant was then arrested for evading detention after he failed to stop in response to Hawkins lights and for providing Hawkins with a false name. Appellant was searched and no contraband was discovered. Appellant was again searched when he was booked and again no contraband was discovered.

The day after his arrest, while an inmate in the El Paso County Detention Facility, Appellant was strip searched by Raul Dorado, an El Paso County Sheriff's Department detention officer. The search was precipitated by information received by Dorado that Appellant was going to sell drugs on the sun porch. After Appellant removed his clothing, Dorado saw a "pink folded slip under [Appellant's] crotch. Dorado ordered Appellant to hand over the piece of paper, which he did. The piece of paper was later discovered to contain .26 of a gram of cocaine. Appellant was charged with possession of a controlled substance.

### *ISSUES PRESENTED*

Appellant complains of his conviction asserting five points of error. In Point of Error No. One, Appellant complains that the trial court erred in allowing the state to put on hearsay evidence of a confidential informant. In Point of Error No. Two, Appellant complains that the trial court erred in denying Appellant's challenge for cause of prospective jurors pursuant to Article 35.16 of the Texas Code of Criminal Procedure. In his third point of error, Appellant complains that the trial court erred in failing to give a jury charge on the legality of his strip search at the detention facility and his initial arrest. In Point of Error No. Four, Appellant complains that the trial court erred by refusing to order disclosure of the identity of the State's informant. In his fifth point of error, Appellant complains that the trial court erred by denying his motion for mistrial made in response to improper and non-responsive remarks of a State witness.

### *Discussion*
#### *Point of Error No. One*

Appellant's first point of error challenges the trial court's admission of hearsay evi-

dence in the form of testimony by Officer Dorado that he had received information that there "was going to be a transaction up at the sun porch, deal of drugs, cocaine" and that "[i]nmate Oberg was going to sell some drugs up at the sun porch."

"Hearsay" is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). A statement that is not offered to prove the truth of the matter asserted is not hearsay. See TEX.R.CRIM.EVID. 801(d). Likewise, a statement that is offered not to prove the truth of the matter asserted but rather to establish the circumstances leading to the officer's approach of a defendant are not hearsay. *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim.App.1992) (statement that was not offered to prove the truth of the matter asserted, but to show why officer got an arrest warrant and searched defendant was not objectionable as hearsay); *Jordan v. State*, 852 S.W.2d 689, 693 (Tex.App.—Houston [14th Dist.] 1993), *affirmed*, 883 S.W.2d 664 (Tex. Crim.App.1994) ("statements were not offered to show that appellant had the cocaine.... While the statement may be hearsay with regard to proving the black male could take Officer Neely to a drug trafficking location, it did not go to whether appellant sold the drugs to the officer"). In the case at bar, the statement would be hearsay if admitted to prove that Appellant intended to sell drugs, or that Appellant *possessed* the drugs, which was proved up by independent evidence, the evidence was not admitted for such purpose but to establish the circumstances leading to the officer's search. See also *Roberts v. State*, 743 S.W.2d 708, 711 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd).

Furthermore, even if we were to apply the more stringent requirements of *Schaffer v. State*, 777 S.W.2d 111 (Tex.Crim.App.1989), Officer Dorado's statement would still be admissible. In *Schaffer* the Court held:

The police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on grounds that she was entitled to tell the jury the information upon which she acted.
Id. at 114–15.

Schaffer went on to note however, that unless "the officer's actions ... are not put into question before the jury, testimony that the officer acted upon 'information received' or words to that affect should be sufficient." *Id.* at 117. Appellant placed Dorado's actions in question when he challenged the lawfulness of his search. Consequently, even under *Schaffer*, Dorado's testimony would be admissible.

Even if the testimony were deemed inadmissible, any error caused thereby was harmless. The record clearly reflects that Appellant was charged and tried with possession not with possession with intent to distribute. The complained of testimony did not go to an element of the offense with which Appellant was charged and therefore, any error in admitting it was harmless. *Beverly v. State*, 795 S.W.2d 846, 846–47 (Tex. App.—Beaumont 1990, no pet.). Point of Error No. One is overruled.

### Point of Error No. Two

In his second point of error, Appellant complains that the trial court erred in refusing to grant his challenge for cause to four prospective jurors. The trial court's exercise of discretion in determining whether individual panel members are qualified under Article 35.16 of the Texas Code of Criminal Procedure is to be judged in light of the entire examination of that panel member. TEX.CODE CRIM.PROC.ANN. art. 35.16 (Vernon 1989); *Johnson v. State*, 773 S.W.2d 322, 325 (Tex.Crim.App.1989), *petition for cert. filed*, —— U.S. ——, 113 S.Ct. 1148, 122 L.Ed.2d 499 (1993). Great deference is given to the trial judge's firsthand evaluation of the potential juror's qualifications. *Mooney v. State*, 817 S.W.2d 693, 701 (Tex.Crim.App. 1991); *Felder v. State*, 758 S.W.2d 760, 766 (Tex.Crim.App.1988).[1]

---

1. The record reveals that Appellant exhausted all of his peremptory strikes, requested ten additional peremptory strikes and was refused, and identified objectionable jurors he was forced to ac-

The record reflects that Ms. Lauck, Appellant's trial attorney, questioned the panel generally. Specifically, Ms. Lauck asked the following questions all of which were responded to in the negative as is evidenced by the lack of response from the venire.

[I]s there anyone here that doesn't believe that a State agent like a police officer or a detention officer, that they would never bend the truth a little to protect their partners or their friend's backs just a little? Is there anyone here that doesn't believe that's possible? No one?

Is there anyone in here that doesn't believe that sometimes State agents, like police officers, detention officers, jailers, ever have convenient memory lapses or maybe they don't ever turn their back a little when something is going on that they are not supposed to see? Does anybody believe that's impossible, that never happens? No?

Does anyone ever believe that sometimes if a police officer or a jailer just doesn't like someone, they might conveniently make the charges a little harsher than they might have been, that they might maybe set the person up a little bit? Does anyone believe that's absolutely impossible and never ever happens? No?

Do you think that police officers, jailers, do you think its impossible that they might get together and get their stories straight before they testify? Does anyone believe that's impossible and never happens? No?

Ms. Lauck then went on to individually question the panel and obtained what she deemed answers sufficient to automatically exclude four jurors who were in fact seated on the jury panel; Woodyard, Adams, Atherton, and Carmona. The question asked of each individual panel member was "would you automatically believe or lean towards an officer being truthful." Mr. Woodyard responded:

JUROR: I would. I am *inclined towards* but not automatically.

MS. LAUCK: So, you—when I was talking about, before, you don't believe they ever bend the truth a little?

cept. This point of error was therefore pre-

JUROR: I believe that. That's why I say not automatically.

MS. LAUCK: But you would be more inclined to believe them than, say, the lady next to you.

JUROR: Well, not—I am not acquainted with her.

MS. LAUCK: Well, you are not acquainted supposedly with the police officers that you are going to listen to either. Right?

JUROR: Right.

MS. LAUCK: So, are you telling me that you haven't met the lady next to you and you haven't met the police officers, but you would kind of—if she said the light was green and the police officer said it was red, you would kind of believe the police officer.

JUROR: I would be inclined, but like I said, not automatically, absolutely believe the police officer.

Ms. Adams stated that:

JUROR: Yes, I would. Just like they said [referring to answers of prior jurors]. I believe they could possibly lie, but that's—if all things were even, I would probably believe the police officer.

MS. LAUCK: Do you think that would affect your ability to judge his credibility? I mean, are you unable to believe he can lie?

JUROR: No. I am not unable to believe that.

Ms. Atherton stated that:

JUROR: Yes. [I would be more inclined toward the police officer].

Mr. Carmona:

JUROR: Well, let me put it this way, if he is—if he is going to take the oath, he has got to say the truth. Right?

MS. LAUCK: Does he?

JUROR: To me, that's my belief.

MS. LAUCK: So, are you saying he is more inclined to tell the truth than the man next to you?

JUROR: Yes.

served. *Felder,* 758 S.W.2d at 766.

In light of the general questioning at the beginning of voir dire and the individual answers provided by each prospective juror, we do not find that these answers were sufficient to require automatic exclusion on the basis of bias or prejudice pursuant to Article 35.16 of the Texas Code of Criminal Procedure. The answers provided by these prospective jurors do not rise to the level of bias or prejudice condemned in *Hernandez v. State,* 563 S.W.2d 947 (Tex.Crim.App.1978). In *Hernandez,* the prospective juror stated that a police officer would not tell a falsehood on the witness stand *under any circumstances. Id.* at 950. Here, none of the challenged jurors asserted that they could not believe that a police officer is capable of lying. On the contrary, all the challenged jurors stated that they could believe a police officer is capable of lying. The prospective jurors here merely admitted an inclination to believe a police officer over a non-police officer and mere inclination will not rise to the level of bias condemned by Article 35.16. See *Montoya v. State,* 810 S.W.2d 160, 171–72 (Tex.Crim.App.1989); *Gardner v. State,* 730 S.W.2d 675, 692–93 (Tex.Crim.App.1987). Upon these facts, we find that the trial court did not abuse its discretion in denying Appellant's challenge for cause of these jurors. Point of Error No. Two is overruled.

### *Point of Error No. Three*

In his third point of error, Appellant asserts that the trial court erred in failing to give a jury charge pursuant to Article 38.23 of the Texas Code of Criminal Procedure on the legality of his initial stop and his subsequent strip search in the El Paso Detention Facility. Appellant contends that a fact issue was raised as to the legality of his initial stop and he was therefore entitled to a jury instruction on that issue. Appellant alternatively argues that Officer Dorado lacked reasonable suspicion, in accordance with El Paso Detention Facility regulations, for his subsequent strip search and that he was therefore entitled to a 38.23 instruction on the strip search itself. Appellant failed to request a

38.23 instruction on the strip search at trial and therefore did not preserve error on this point. TEX.R.APP.P. 52; *Kelly v. State,* 669 S.W.2d 720, 726 (Tex.Crim.App.1984) (failure to request a 38.23 instruction results in waiver of error).

As to the legality of Appellant's initial stop, Article 38.23 provides that:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1994).

A trial court is required to give a 38.23 instruction only if there is a factual dispute as to how the evidence was obtained. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim. App.1986). If there is no factual dispute, a request for such a charge should be refused. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex. Crim.App.1982).[2]

Hawkins' testimony described at least two separate traffic violations, either of which constituted sufficient grounds for the initial detention of Appellant. Furthermore, Hawkins' testimony established that once legally stopped, Appellant provided Hawkins with a false name. Appellant was then arrested for evading detention and failure to identify.

Officer Hawkins' testimony was not controverted in any way. Appellant did not testify at trial. Appellant called no witnesses to controvert Officer Hawkins' recitation of the

---

**2.** Appellant's argument presents an issue of first impression for this Court in that he asserts that his subsequent strip search, over twenty-four hours after his initial arrest, relates back to the

initial stop and constitutes fruit of the poisonous tree of his initial illegal stop. We need not reach this argument however, as we find the initial stop to be valid.

stop. Cross-examination of Officer Hawkins did not elicit any facts which negated Officer Hawkins' right to arrest Appellant. Thus, the uncontroverted evidence supported the trial court's implied finding that Appellant was stopped legally. *Espericueta v. State,* 838 S.W.2d 880, 882–83 (Tex.App.—Corpus Christi 1992, no pet.) (appellant failed to controvert officer's testimony, trial court's implied finding of valid stop upheld). The cases relied upon by Appellant do not support his position. See *Stone v. State,* 703 S.W.2d 652, 655 (Tex.Crim.App.1986) (appellant and witness both controverted officer's testimony); *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim.App.1993) (appellant and witness controverted officer's testimony). We do not find, upon this evidence, that a fact issue was raised as to the legality of the initial stop and the trial court was therefore not required to give a 38.23 instruction. Point of Error No. Three is overruled.

### Point of Error No. Four

In his fourth point of error, Appellant contends that the trial court erred in refusing to order the State to disclose the identity of its confidential informant. Disclosure of an informant's identity is required when there is a reasonable probability that the informant can give testimony necessary to a fair determination of guilt and innocence. *Anderson v. State,* 817 S.W.2d 69, 72 (Tex. Crim.App.1991). Appellant has the burden of demonstrating that the informant's identity must be disclosed and must make a plausible showing of how the informer's information may be important. *Bodin v. State,* 807 S.W.2d 313, 317–18 (Tex.Crim.App.1991); *Abdel-Sater v. State,* 852 S.W.2d 671, 673–74 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd).

Appellant was convicted of possession of cocaine. The record reflects that Appellant was found in possession of the cocaine after a strip search where the cocaine was found hidden in his crotch. Furthermore, Appellant himself, in his case-in-chief, introduced evidence of his possession of the cocaine. Upon these facts, we find that Appellant has failed to make any plausible showing as to how disclosure of the informant's identity could add to a fair determina-

tion of guilt or innocence as it relates to his possession of the cocaine. Point of Error No. Four is overruled.

### Point of Error No. Five

In his final point of error, Appellant complains that the trial court erred in denying his motion for mistrial due to an improper and non-responsive remark made by a State witness. During re-direct examination of Fernando Pena, Jr., a Texas Department of Public Safety chemist, the following occurred:

Q: Now, sir, the amount [of cocaine] that was found was how much?

A: .26

Q: .26 of a gram. Is that correct? Now, do you know if that amount is enough to get a high on?

A: I couldn't tell you that.

Q: You don't know?

A: *But I know that people have killed for amounts such as those.*

DEFENSE: I object to that as non-responsive, Your Honor.

COURT: Sustained.

DEFENSE: I move to disregard.

COURT: Disregard.

DEFENSE: Move for mistrial.

COURT: Denied.

Generally, any error resulting from a nonresponsive answer is cured by an instruction to disregard. *Ridyolph v. State,* 545 S.W.2d 784, 787 (Tex.Crim.App.1977); *Grayson v. State,* 786 S.W.2d 504, 506 (Tex. App.—Dallas 1990, no pet.) This is so except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *McKay v. State,* 707 S.W.2d 23, 36 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), citing *Carey v. State,* 537 S.W.2d 757, 759 (Tex. Crim.App.1976). See also *Brown v. State,* 692 S.W.2d 497 (Tex.Crim.App.1985). Furthermore, where there is no further mention of the subject, and no attempt by the State to

pursue it, no error is shown. *Curlin v. State,* 505 S.W.2d 889, 890 (Tex.Crim.App.1974).

The comment objected to by Appellant related to the amount of cocaine found on his person and the witness's belief that such an amount was sufficient to kill over. The response did not in any way comment on the guilt or innocence of the Appellant or on his character generally. The record clearly reflects that the trial court properly instructed the jury to disregard the witness's statement. Furthermore, the State made no attempt to pursue the statement and did not mention it again.

Because this comment was unconnected to Appellant himself, we find that such comment was harmless. Cf *Richardson v. State,* 624 S.W.2d 912, 914 (Tex.Crim.App. 1981) (witness's comment that defendant had previously been in the penitentiary held harmless upon proper instruction to disregard); *Curlin v. State,* 505 S.W.2d 889, 890 (Tex.Crim.App.1974) (implied comment that defendant was a "blitz bandit" held harmless upon proper instruction). We do not find that this comment was of such a character as to make impossible the withdrawal of its effect on the minds of the jury and any error resulting from its admittance was cured by the court's instruction to disregard. Point of Error No. Five is overruled.

The judgment of the trial court is affirmed.