Gary Curtis **FAISON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–99–00226–CR.

Court of Appeals of Texas, Tyler.

April 25, 2001.

Discretionary Review Refused Sept. 19 and Oct. 5, 2001.

Lori Ordiway, Dallas, for Appellee.

R.D. Rucker, Dallas, for Appellant.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

WORTHEN, Justice.

Gary Curtis Faison ("Appellant") appeals his jury conviction for aggravated sexual assault. The jury assessed life imprisonment. In fourteen issues, Appellant contends that the evidence was legally insufficient to convict him and that the trial court erred: (1) in failing to swear in the members of the jury, (2) by cumulating his life imprisonment sentence with a life sentence in another sexual assault case, (3) by denying his motion for change of venue, (4) by overruling a challenge for cause to a prospective juror, (5) in determining there was probable cause to issue a warrant to draw his blood, (6) by denying two motions for mistrial, (7) by admitting evidence of three extraneous offenses, and (8) by overruling his objections to the prosecution arguing facts not in the record. We affirm.

## BACKGROUND

### I. Factual

On June 19, 1997, G.C. was sexually assaulted vaginally, anally and orally. When G.C.'s attacker ejaculated in her mouth, she retained the seminal fluid in her mouth until he had left her apartment and then spit it into a plastic container. The seminal fluid was delivered on June 20 to the Southwestern Institute of Forensic Sciences ("SWIFS") laboratory for testing. In July 1998, after another assault and other suspicious circumstances placed Appellant in the same Northeast Dallas area of G.C.'s aggravated sexual assault, a search warrant was · issued allowing SWIFS to test his blood. Carolyn Van-Winkle, a deoxyribonucleic acid ("DNA") testing expert for SWIFS, testified that the DNA found in the spermatozoas from the seminal fluid spit out by G.C. matched the DNA in Appellant's blood sample. VanWinkle concluded the odds that Appellant or an identical twin brother had not sexually assaulted G.C. were 380 million to one among African–American males.

Appellant, through the testimony of his adoptive mother, Vera Grace Faison ("Vera"), showed that he had been an adopted child. Vera testified that she did not know whether his birth mother had twins at the time Appellant was born or if he had a brother. VanWinkle testified that she had not considered that Appellant

had an identical twin or a brother living in Dallas County while she was conducting the DNA testing. Appellant, through cross-examination of prosecution witnesses and the testimony of Vera, raised the issue of the identity of the individual who had sexually assaulted G.C. After the issue of identity was raised, the State introduced the testimony of A.P., J.H., and P.S. The testimony of these witnesses, along with that of the law enforcement officials who investigated these aggravated sexual assaults, established that the crimes were carried out in a similar manner and that Appellant's fingerprints or palmprints were found at each of the three crime scenes.

## II. Procedural

In December 1998, a jury in the 363rd District Court of Dallas County found Appellant guilty of sexually assaulting A.P. and assessed a life imprisonment sentence. In March 1999, Appellant was indicted for the aggravated sexual assault of G.C. On May 10, 1999, Appellant proceeded to trial before a jury after entering a plea of not guilty. On May 18, the jury found Appellant guilty of aggravated sexual assault as alleged in the indictment. The punishment hearing commenced immediately, and on May 21, the jury assessed punishment at life imprisonment for the aggravated sexual assault of G.C. The trial court then ordered this life sentence to be served following the life sentence for assaulting A.P. Appellant timely filed this appeal.

### LEGAL SUFFICIENCY

In his first issue, Appellant contends that the evidence was not legally sufficient to convict him because the DNA testing performed by VanWinkle did not exclude a possible twin or brother. Vera testified that Appellant did not know if he had a twin or brother. Evidence showed that twins or a brother can have identical DNA. Appellant contends that evidence created a high probability that he was wrongly convicted.

■■■ The standard of review for legal sufficiency of the evidence is whether, viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard is applicable to both direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991); *Richardson v. State,* 879 S.W.2d 874, 879 (Tex.Crim.App. 1993), *cert. denied,* 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a mere modicum of evidence." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). All conflicts in the evidence should be resolved in favor of the verdict, and every reasonable inference indulged. *Sneed v. State,* 803 S.W.2d 833, 837 (Tex.App.—Dallas 1991, pet. ref'd); *see also Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App.1993). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the testimony of each witness. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981). "The jury may reject any or all or any witness' testimony." *White v. State,* 890 S.W.2d 131, 134 (Tex.App.—Texarkana 1994, pet. ref'd).

■■■ It was undisputed at trial that G.C. had been sexually assaulted. Dr. Gary Ackerman testified as to the severity of the injuries suffered by G.C. during the aggravated sexual assault. Dr. Ackerman described a laceration at the posterior of

the vagina and three deeper lacerations around her rectum. Dr. Ackerman further testified that it was only in a minority of the hundreds of sexual assault victims that he had examined that he had found any type of laceration in either the vagina or rectum. The aforementioned testimony of VanWinkle established the odds of the perpetrator of the aggravated sexual assault on G.C. not being Appellant or an identical twin were one in 380 million among African–American males. Dr. Robert C. Benjamin, a molecular biologist, testified on behalf of Appellant that the odds were one in four that a brother could have the identical DNA as Appellant. Vera followed Dr. Benjamin to the witness stand to testify that she did not know whether Appellant had a brother or not. She said that she had adopted him through Hope Cottage in Dallas and did not know his biological mother and had never met her.

After defendant raised the issue of whether a twin or a brother of Appellant had perpetrated the aggravated sexual assault on G.C., the State introduced evidence of three other aggravated sexual assaults committed by Appellant. A.P., J.H., and P.S. each described the aggravated sexual assault committed upon them in similar terms as those testified to by G.C. Each of the women described their attacker as an African–American male with similar physical characteristics. Law enforcement officers testified that either the fingerprints or palmprints of Appellant were found at the scene of the aggravated sexual assaults of A.P., J.H., and P.S.

Applying the aforementioned standard of review to the facts before the jury in this case, we hold there was legally sufficient evidence to convict Appellant of aggravated sexual assault of G.C. Appellant's first issue is overruled.

## JURY OATH

In his second issue, Appellant contends that the trial court failed to administer the required oath to the jury after it had been selected. See TEX.CODE CRIM. PROC. ANN. art. 35.22 (Vernon 1989). The State responds that unless the record affirmatively shows the contrary, the court of appeals must presume that the jury was properly impaneled and sworn. See TEX.R.APP. P. 44.2(c)(2).

The record does not affirmatively show that the oath was not administered to the jury. Furthermore, we find no objection by Appellant in the record to a failure to administer the oath to the jury panel. Appellant has raised this issue for the first time on appeal. Therefore, he has failed to present error under this issue, and it is overruled. See Clay v. State, 505 S.W.2d 882, 884–85 (Tex.Crim.App.1974).

## CONSECUTIVE SENTENCES

In his third issue, Appellant contends that the trial court erred when it ordered that his life sentence imposed for the aggravated sexual assault of G.C. should run consecutively to the life sentence he was presently serving for the aggravated sexual assault of A.P. Appellant contends that the aggravated sexual assaults of A.P. and G.C. constituted the same criminal episode because they involved repeating the same or similar offense. See TEX. PEN.CODE ANN. § 3.01 (Vernon 1997). In response, the State argues Appellant was prosecuted in separate criminal actions under which the trial court was permitted to order consecutive sentences. The State argues that although Appellant's conduct in each aggravated sexual assault was similar, the cases involved different victims. We agree. Our law provides for concurrent sentencing when a defendant is convicted of more than one offense arising out of the same

criminal episode "prosecuted in a single criminal action." TEX. PEN.CODE ANN. § 3.03. Here, Appellant was prosecuted in two separate jury trials occurring over one year apart. The trial court did not abuse its discretion by ordering consecutive sentences. *See* TEX.CODE CRIM. PROC. ANN. art. 42.08; *and see Stout v. State*, 908 S.W.2d 552, 553 (Tex.App.—Fort Worth 1995, no pet.).

■■■ Appellant further argues as part of this issue that the order of cumulation was void because it recited only one item, namely the cause number of the prior conviction. Appellant contends that a cumulation order must contain the five elements of the trial court number of the prior conviction, the correct name of the court where the prior conviction was taken, the date of the prior conviction, the term of years of the prior conviction, and the nature of the prior conviction. *Williams v. State*, 675 S.W.2d 754, 763–64 (Tex.Crim. App.1984). In response, the State contends that our Court of Criminal Appeals has only recommended these elements in a cumulation order and not required them. *Id.* The State's position is supported in *Williams* where the Court of Criminal Appeals determined that cumulation orders which merely set out the cause number and the correct name of the trial court of the prior conviction are sufficient. *See id.* In the case before us, it was the same 363rd District Court of Dallas County which had entered the judgment and sentence against Appellant for his aggravated sexual assault of A.P. It was thus unnecessary for the cumulation order following his judgment and sentence for the aggravated sexual assault of G.C. to contain anything other than the cause number of the previous aggravated sexual assault. *See id.* Appellant's third issue is overruled.

## CHANGE OF VENUE

In his fourth issue, Appellant contends the trial court abused its discretion in denying his motion for a change of venue. At the hearing on his motion for change of venue, Appellant offered into evidence newspaper articles about the case and presented witness testimony. Two Dallas criminal defense attorneys testified that there had been extensive news coverage of the charges against Appellant prior to trial. There was evidence before the trial court that Appellant was a disc jockey on a highly rated morning program at radio station KKDA in Dallas. There was testimony that the news media was reporting that Appellant could be linked by DNA evidence to a number of sexual assaults in addition to the one for which he was on trial, and the news media was reporting that Appellant had a prior rape conviction. The State countered this evidence with six affidavits declaring that Appellant could receive a fair and impartial trial in Dallas County.

■■■ We review the trial court's decision not to grant a change of venue motion under an abuse of discretion standard, meaning the trial court's decision concerning venue will not be disturbed so long as it was within the realm of reasonableness given the facts presented to the trial court. *Powell v. State*, 898 S.W.2d 821, 824 (Tex. Crim.App.1994). A change of venue may be granted if there exists in the county where the prosecution is commenced so great a prejudice against a defendant that he cannot obtain a fair and impartial trial. TEX.CODE CRIM. PROC. ANN. art. 31.03(a)(1). Extensive knowledge in the community of either the crime or the defendant, without more, is insufficient to render a trial unconstitutional. *Moore v. State*, 935 S.W.2d 124, 129 (Tex.Crim.App.1996). Publicity about the case must be pervasive, prejudicial and inflammatory. *Id.* A defendant

who seeks a change of venue has the burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. *Powell,* 898 S.W.2d at 826. The testimony by the two criminal defense attorneys on behalf of Appellant and the newspaper articles which he offered into evidence demonstrated nothing more than accurate reporting of a newsworthy occurrence in Dallas County. The State countered this evidence with six affidavits showing that Appellant could receive a fair and impartial trial in Dallas County. When media coverage demonstrates nothing more than accurate reporting of a newsworthy occurrence, it is not in and of itself prejudicial and inflammatory. *See Willingham v. State,* 897 S.W.2d 351, 357 (Tex.Crim.App.1995). We hold that Appellant failed to show how the extensive news coverage created an actual identifiable prejudice attributable to that publicity on the part of the members of the jury and has therefore failed to meet his burden of proof that the trial court abused its discretion. Appellant's fourth issue is overruled.

### CHALLENGE TO PROSPECTIVE JUROR

In his fifth issue, Appellant contends that the trial court improperly overruled his challenge for cause to prospective juror Mary Deal. Appellant contends Deal had a bias or prejudice against him based on facts she had learned from news reports. The trial court denied Appellant's challenge of Deal for cause. He then used one of his peremptory challenges to remove her name from the jury list.

■ However, Appellant has failed to preserve this issue for review. In order to preserve error on a challenge for cause, a defendant must exhaust his peremptory challenges, request additional peremptory challenges, identify a member of the jury as objectionable, and claim that he would

have struck the juror with a peremptory challenge. *Broussard v. State,* 910 S.W.2d 952, 957 (Tex.Crim.App.1995); *Nelson v. State,* 848 S.W.2d 126, 134 (Tex.Crim.App. 1992). Here, the court acknowledged that Appellant requested three additional peremptory challenges because of prospective jurors that Appellant had challenged for cause but which had been denied by the court. The court denied this request for peremptory challenges and then immediately seated the twelve members of the jury. The record does not indicate any individual of the twelve jurors impaneled in this matter being named by Appellant as someone he would have struck with the three additional peremptory challenges. Therefore, this issue has not been properly preserved. Appellant's fifth issue is overruled.

### PROBABLE CAUSE FOR SEARCH WARRANT

Appellant contends in his sixth issue that a search warrant allowing the police to draw blood from him during its investigation of the aggravated sexual assault of G.C. lacked probable cause. The State responds that a review of the totality of the circumstances indicates sufficient probable cause to issue a search warrant.

■ Police detective James Skelly had been assigned to investigate reported sexual assault offenses in Northeast Dallas. Skelly had been studying the reports of the sexual assaults in this geographical area for years. In June 1998, he had received a report describing a vehicle leaving the scene of a sexual assault in this area. In July 1998, he received another report involving a confrontation between a private security guard and Appellant who was urinating at 4:00 a.m. in an area apartment complex where he did not live. Appellant drove off from this confrontation in a similar vehicle to the one reported leaving the scene of the previous month's sexu-

al assault. Further, Appellant's physical description fit the general description provided by G.C. and a number of the other sexual assault victims in this geographical area. Finally, Appellant lived near the area, and the June sexual assault was similar to the 1982 sexual assault for which Appellant had been convicted. Skelly then presented an application for a search warrant to a magistrate requesting authority to draw blood from Appellant and test it. The magistrate signed the warrant.

■■■■ Whether the facts alleged in a probable cause affidavit sufficiently support a search warrant is determined by examining the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 228–29, 103 S.Ct. 2317, 2326–27, 76 L.Ed.2d 527 (1983); *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex.Crim.App.1996). A magistrate is permitted to draw reasonable inferences from the facts and circumstances alleged. *Ramos*, 934 S.W.2d at 363. Reviewing courts should accord great deference to the magistrate's determination. *Id.*

Skelly's sworn affidavit in support of the search warrant contained eyewitness information regarding the suspect's description. Skelly showed there had been similar descriptions in numerous offenses, including the aggravated sexual assault of G.C. The description of Appellant's vehicle as described by an eyewitness following a reported sexual assault and then being corroborated by a separate eyewitness under suspicious circumstances in the same general area a month later add to the totality of the circumstances supporting the issuance of the search warrant. Based on these facts and others recited above, we hold that the magistrate had sufficient evidence linking Appellant to the aggravated sexual assaults in this same general area to issue a search warrant allowing police to

draw his blood to further their investigation. Appellant's sixth issue is overruled.

### COMMENT ON FAILURE TO TESTIFY

In his seventh issue, Appellant contends that the trial court erred in denying his motion for a mistrial where the prosecution alluded to his failure to testify, thereby depriving him of his Fifth Amendment right against self-incrimination. The State responds that any error was cured by the trial court's instructions to the jury to disregard the prosecutor's question.

■■■■ In a criminal case, an accused shall not be compelled to give evidence against himself. TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1997). The failure of an accused to testify during the guilt/innocence stage of his trial shall not be taken as a circumstance against him, nor shall it be alluded to or commented on by counsel in the case. *Brown v. State*, 617 S.W.2d 234, 236 (Tex.Crim.App.1981). Such a comment is a contravention of a federal constitutional guarantee against self-incrimination contained in the Fifth Amendment. *Stafford v. State*, 578 S.W.2d 394, 395 (Tex.Crim.App.1978). However, an instruction by the trial court to the jury to disregard any such comment is generally sufficient to cure any error which may have occurred. *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995); *Chavez v. State*, 960 S.W.2d 829, 830 (Tex. App.—El Paso 1997, no pet.). Only in the most blatant examples will the trial court's instructions to disregard fail to cure any comments or questions by the prosecutor on a defendant's failure to testify. *See Dinkins*, 894 S.W.2d at 356.

■■■ In the matter before us, VanWinkle had testified in her direct testimony that there was one chance in 380 million among African–American males that Appellant's DNA did not match the DNA taken from the scene of G.C.'s aggravated

sexual assault. In attacking VanWinkle's assertions as an expert witness, Appellant's counsel elicited the following answers from VanWinkle during cross-examination:

. . .

(DEFENSE COUNSEL) Q. Can you eliminate a brother, without having tested the brother?

(VANWINKLE) A. No.

Q. You can't, can you?

A. No.

Q. Do you know, as you've testified here today before this Court, whether or not Gary Curtis Faison has a biological brother in Dallas County, Texas? Can you tell this jury that he does not?

A. I have no knowledge of that.

Q. Can you tell the jury whether or not you were ever asked to test any biological brother of Gary Curtis Faison?

A. Certainly not by the Defense or the prosecution, no.

Q. So the answer is, you were never asked that?

A. Correct.

Q. And as we sit here today, you cannot exclude from your results whether or not a biological brother has a similar profile to that that you have matched in analyzing, as it relates to Gary Curtis Faison, can you?

A. I have no information. Correct.

Q. That changes that estimate dramatically, from one out of 380 billion. It could get down as low as one out of a thousand, couldn't it?

A. I don't know. I don't know what that number would be, without testing.

. . .

This line of questioning by Appellant's counsel was an attempt to shake VanWinkle from her assertion that the odds were overwhelming that the DNA found at the scene of the aggravated sexual assault against G.C. was Appellant's. Appellant's counsel had even exaggerated VanWinkle's figures, saying one in 380 "billion" during his cross-examination. Obviously, this was an attempt to shake the jury's confidence in the validity of the DNA test performed by VanWinkle. The prosecutor, in an attempt to rehabilitate VanWinkle during her redirect testimony, asked the following questions:

. . .

STATE: Q. Now, when you were drawing his blood out there at the Southwestern Institute of Forensic Sciences, did he tell you "by the way, I'm adopted?"

MR. ALLEN: I'll object to any statements by this Defendant.

THE COURT: Sustained.

MR. ALLEN: Ask the Members of the Jury to disregard that question.

THE COURT: Disregard, Members of the Jury.

MR. ALLEN: Move for a mistrial.

THE COURT: Denied.

. . .

When viewed in context, the question by the prosecutor appears to have been an attempt to rehabilitate VanWinkle rather than a comment upon Appellant's failure to testify. The State clearly had an interest in assuring the jury that VanWinkle's methods were reliable, and the prosecutor appears by her question to have been pointing out that it would be illogical to expect VanWinkle to test a brother no one had indicated existed. We do not believe that the prosecutor's question was so blatant that it rendered the trial court's in-

struction to disregard ineffective. *See Moore v. State,* 999 S.W.2d 385, 405–06 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000). Because error, if any, was cured by the trial court's instruction to disregard, there is no need for us to conduct a harm analysis. *Chavez,* 960 S.W.2d at 830. Appellant's seventh issue is overruled.

### EXTRANEOUS OFFENSES

Appellant's eighth, eleventh, twelfth and thirteenth issues allege that the trial court erred by allowing the introduction of evidence about the aggravated sexual assaults of J.H., A.P., and P.S. Appellant's counsel raised the issue of identity as a defense during his cross-examination of VanWinkle by suggesting a brother could have the same DNA as Appellant and therefore be the perpetrator. Appellant's counsel furthered this defense by having Appellant's adoptive mother testify that she did not know whether he had a biological brother. The State then sought to introduce the extraneous offenses involving J.H., A.P., and P.S. because Appellant had made identity an issue in the case. *See* TEX.R. EVID. 404(b).

■■■■■ The admission of evidence is a matter within the discretion of the trial court. *See Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990) (op. on reh'g.). A trial court's admission of evidence is reviewed under an abuse of discretion standard. *See id.* at 379–80. Identity and the rebuttal of defenses are both valid purposes for admitting evidence under Rule 404(b) of the Texas Rules of Evidence. *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996). To be admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork. *Id.* By raising a defensive theory, a defendant opens the door

for the State to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has common characteristics with the offense for which the defendant was on trial. *See Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1980).

■■■■ The record before us shows that the aggravated sexual assaults of J.H., A.P. and P.S. had striking similarities to the aggravated sexual assault committed upon G.C. All four of the aggravated sexual assaults occurred in apartment complexes in the same general area of northeast Dallas. Each of the four victims was approximately the same age. Appellant gained access to the victims' apartments through either a sliding glass door or window. Each assault occurred in the early morning hours. Appellant threatened to cut each of the victims. Appellant either robbed or threatened to rob each of the victims. Appellant talked to each of the victims or asked them similar questions. Appellant either covered or attempted to cover each of the victims' faces with a pillowcase or pillow. Appellant made three of the four victims get in the shower and wash themselves. Each of the four victims described their attacker as an African–American male with similar physical characteristics. Finally, Appellant's fingerprints or palm prints had been found at the scene of the aggravated sexual assaults of J.H., A.P. and P.S. His DNA "fingerprint" had been found at the scene of the aggravated sexual assault of G.C. We hold that the method of perpetrating the offenses and the circumstances surrounding the offenses were sufficiently similar for the trial court to find that the extraneous offenses were more relevant than prejudicial under Texas Rule of Evidence 404(b) as to Appellant's defense of identity. Appellant's eighth, eleventh, twelfth and thirteenth issues are overruled.

## JURY ARGUMENT

In his ninth and fourteenth issues, Appellant contends that the trial court erred in overruling his objections to the prosecutor's arguing facts not in evidence during closing argument. We will consider these two issues together. Specifically, in issue nine, Appellant contends that the prosecutor misstated the evidence when she stated "So there is evidence that there is no identical twin running around in Dallas County." Appellant contends that this was a misstatement of the evidence.

 Jury argument must be confined to four permissible areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App. 1996). The State contends that the prosecutor's statement that "there is no identical twin running around in Dallas County" was a logical inference from Vera's testimony. She had testified that Appellant was adopted and she was unaware of whether he was a single baby or a twin baby. Argument is proper if it is based on the evidence and inferences from the evidence. *Giesberg v. State*, 945 S.W.2d 120, 126 (Tex.App.—Houston [1st Dist.] 1996), *aff'd*, 984 S.W.2d 245 (Tex.Crim.App.1998), *cert. denied*, 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999). The prosecutor made a logical and reasonable inference from Appellant's adoptive mother's testimony that he did not have an identical twin.

 In his fourteenth issue, Appellant contends that the trial court erred in overruling his objection when the prosecutor stated: "It's a reasonable deduction from the evidence that they did not present their own expert about their own testing because it was identical to Carolyn Van-Winkle's." Evidence at trial indicated that Appellant had hired Bill Watson with the Gene Screen laboratory to test the same evidence which VanWinkle had tested. The prosecutor here was making a reasonable deduction that Watson's results did not dispute VanWinkle's results or surely Appellant would have had Watson testify. A reasonable deduction from the evidence is proper jury argument. *Id.*

 Finally, with regard to both statements at issue, the prosecutor removed any possible error when she prefaced her statements by saying they were reasonable deductions from the evidence. *See Mijores v. State*, 11 S.W.3d 253, 358 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Appellant's ninth and fourteenth issues are overruled.

## NONRESPONSIVE WITNESS STATEMENT

 In his tenth issue, Appellant contends that the trial court erred in denying his motion for a mistrial following a nonresponsive statement by a State's witness during the punishment phase of his trial. M.S. testified as a State's witness that Appellant had sexually assaulted her in her apartment at 6:00 a.m. on July 7, 1998. During cross-examination of M.S. by one of Appellant's attorneys, she was asked ten consecutive questions about what she had heard from her friends and her store manager about Appellant. The tenth and final question led to the nonresponsive statement complained of by Appellant. The record includes this exchange:

. . .

Q. You're telling us that your friend at the day care—that's what your friend was telling you, about this rapist they were flashing across the news?

A. My friends were making comments. The manager was making comments. "This is amazing. Some raper is in jail." And also I remember that they

said 20 women were making calls and tell them they were raped.

MS. DAVIS: I'm going to object to nonresponsive, Your Honor.

THE COURT: Sustained.

MS. DAVIS: Ask the jury to disregard.

THE COURT: Disregard, Members of the Jury.

MS. DAVIS: Move for a mistrial.

THE COURT: Denied.

. . .

 Generally, any error resulting from a nonresponsive statement is cured by an instruction to disregard. *Ridyolph v. State*, 545 S.W.2d 784, 787 (Tex.Crim. App.1977); *Oberg v. State*, 890 S.W.2d 539, 545 (Tex.App.—El Paso 1994, pet. ref'd). This is so except in extreme cases where it appears that the evidence is so clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Id.* In the case before us, this nonresponsive statement came only after a string of ten questions on cross-examination during the punishment phase of the trial asking a witness what her friends had told her about Appellant. Within the context of the trial, it is not clear that this statement by this witness during the punishment phase of the trial inflamed the jury in such a way that the impression produced on their minds could be withdrawn by the trial court's instruction to disregard. Generally, testimony referring to or implying extraneous offenses allegedly committed by the defendant may be rendered harmless by the trial court's instruction to disregard. *See Coe v. State*, 683 S.W.2d 431, 436 (Tex. Crim.App.1984); *Dickey v. State*, 979 S.W.2d 825, 829 (Tex.App.—Houston [14th Dist.] 1998, no pet.). We presume the jury followed the trial court's instruction. *Id.; see also Gardner v. State*, 730 S.W.2d 675,

696 (Tex.Crim.App.1987). Appellant's tenth issue is overruled.

The judgment of the trial court is *affirmed.*