In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00126-CR


______________________________




STEVEN LEMOND DARDEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 28095-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Steven Lemond Darden appeals his conviction for unlawful possession of a firearm
by a felon. Tex. Pen. Code Ann. § 46.04 (Vernon Supp. 2002). A jury found Darden
guilty and assessed punishment at eight years' imprisonment. Darden appeals, contending
the trial court abused its discretion by admitting evidence of an extraneous offense.

 On May 15, 2000, Longview police attempted to serve an arrest warrant for Darden. 
The police had a tip Darden was at a particular residence wearing red clothing. When the
police entered the residence, Officer Doug Binkley saw Darden, who turned and fled. 
While chasing Darden, the police saw Darden discard a gun, which the police retrieved. 
Darden successfully eluded arrest at that time. On July 14, 2000, Longview police arrested
Darden on unrelated charges. On the occasion of this arrest, Darden again fled when he
was stopped by the police, but was quickly apprehended. 

 At his trial for unlawful possession of a firearm by a felon, stemming from the
May 15 incident, the court overruled Darden's objection to the admission of the extraneous
offense of his attempted flight from police on July 14. Darden contends the trial court erred
in allowing this evidence before the jury during the guilt/innocence phase of his trial. 

 The standard of review of a trial court's decision to admit or exclude evidence is
abuse of discretion. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App.), cert.
denied, ___ U.S. ___, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). We review the trial court's
ruling admitting the extraneous offense evidence under an abuse of discretion standard,
meaning we uphold the trial court's decision if it is within "the zone of reasonable
disagreement." Id.

 Generally, evidence of other crimes, wrongs, or acts is inadmissible for the purpose
of proving action in conformity therewith, unless it is admissible for other purposes, such 
as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident. Tex. R. Evid. 404(b); Montgomery v. State, 810 S.W.2d 372,
387-88 (Tex. Crim. App. 1990) (op. on reh'g) (identity is a valid purpose for admitting
evidence under Rule 404(b)). As required, Darden timely requested notice from the State
of its intent to introduce evidence of an extraneous offense. See Tex. R. Evid. 404(b). The
State gave notice of its intent to introduce an extraneous offense.

 The State sought the admission of this extraneous offense to show the identity of
Darden. Before extraneous offenses may be admitted to show identity, identity must be
an issue in the case. Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996); Moore
v. State, 700 S.W.2d 193, 201 (Tex. Crim. App. 1985). Raising the issue of identity does
not automatically render extraneous offenses admissible. Lane, 933 S.W.2d at 519. "To
be admissible to show identity, an extraneous offense must be so similar to the offense
charged that the offenses are marked as the accused's handiwork." Id.; Bishop v. State,
869 S.W.2d 342, 346 (Tex. Crim. App. 1993). Sufficient similarity may be shown by
proximity in time and place or by a common mode of committing the offenses. Lane, 933
S.W.2d at 519; Ransom v. State, 503 S.W.2d 810 (Tex. Crim. App. 1974).

 The offense charged in this case was possession of a firearm by a felon. The
extraneous offense admitted was of Darden attempting to evade arrest. The trial court
erred in admitting the evidence of Darden's attempted evasion from the police on July 14,
2000. Even if Darden put his identity into issue as the State claims, this extraneous
offense evidence does not fit within the permissible extraneous offense evidence allowed
to show identity. By raising a defensive theory, a defendant opens the door for the state
to offer rebuttal testimony regarding an extraneous offense if the extraneous offense has
common characteristics with the offense for which the defendant is on trial. See Bell v.
State, 620 S.W.2d 116, 126 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g); Faison v.
State, 59 S.W.3d 230 (Tex. App.-Tyler 2001, pet. ref'd). However, evidence admitted for
the purpose of proving identity must demonstrate a much higher degree of similarity to the
charged offense than extraneous acts offered for other purposes, such as intent. Bishop,
869 S.W.2d at 346. Without such similarity, the probative value of such evidence would
be substantially outweighed by its prejudicial effect. Id. The fact Darden ran on another
occasion does not help demonstrate he was a felon in possession of a firearm, the offense
for which he was charged.

 We find the trial court erred in allowing into evidence at the guilt/innocence phase
of trial an extraneous offense unrelated to the offense charged. Having determined error,
we now turn to the harmfulness of the error. We consider this type of error to be
nonconstitutional. It must be disregarded if it does not affect Darden's substantial rights. 
Tex. R. App. P. 44.2(b). A substantial right is affected when the record shows the error had
a substantial and injurious effect or influence in determining the jury's verdict. King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328
U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). Thus, we review the entire
record to determine whether the error had more than a slight influence on the verdict. 
Veteto v. State, 8 S.W.3d 805, 815 (Tex. App.-Waco 2000, pet. ref'd); Fowler v. State, 958
S.W.2d 853, 866 (Tex. App.-Waco 1997), aff'd, 991 S.W.2d 258 (Tex. Crim. App. 1999). 

 The question is, did the admission of the extraneous offense have more than a
slight influence on the verdict. A review of the entire record shows that Binkley positively
identified Darden before Darden ran on May 15 and that the police witnessed Darden
throwing the gun as he ran. In light of this unchallenged evidence, we cannot say the
admission of this extraneous offense evidence had more than a slight influence on the
verdict. 

 Darden also contends the trial court's error in admitting this extraneous offense
evidence was compounded by the prosecutor's statements during closing argument
concerning Darden's possession of marihuana on the occasion of his arrest on July 14. 
However, a review of the record shows that, while Darden objected to the prosecutor's
reference to cocaine, he failed to make a timely complaint concerning the reference to
marihuana. Error has not been preserved. Tex. R. App. P. 33.1.


 We overrule Darden's point of error and affirm the judgment.



 Donald R. Ross

 Justice



Date Submitted: January 17, 2001

Date Decided: February 14, 2002


Do Not Publish



ted was
classified by the Legislature as a Class A misdemeanor, not a felony. Because of this
contradictory evidence, the court held that the evidence was legally sufficient, but factually
insufficient to prove the underlying offense was a felony.
          The evidence in this case is stronger and clearer than that in Burns. Here, Jacobs'
bond makes no affirmative statement about the classification of the offense, but it does
have an underlining of the word "misdemeanor" that appears on the printed form of the
bond. All of the other evidence, however, shows the underlying charge against Jacobs was
a felony. The district court bailiff testified that Jacobs was required to appear on a felony
theft charge. At the defense counsel's request and with the prosecutor's agreement, the
trial court took judicial notice of its own records, noting that the docket sheet for the case
against Jacobs showed that the case was docketed as a felony.
          We find legally sufficient evidence to support the trial court's finding that the offense
for which Jacobs was required to appear was a felony. Jacobs has not raised a factual
insufficiency challenge on this issue. The trial court did not err in refusing Jacobs' motion
for a finding of not guilty.
          Jacobs also contends the trial court erred in allowing the State to introduce evidence
of numerous other failures of Jacobs to appear in court when required to do so, as well as
several bond forfeitures in other cases. The trial court found that Jacobs "opened the
door" to this evidence when he testified that it was not true that he had a habit of failure to
appear, and that he had missed only once and had not had any bond forfeitures. Jacobs'
voluntary testimony included the following:
[Prosecutor]: And in this particular case, you were getting pretty close
to trial on that case, were you not, with Mr. Verschoyle [Jacobs' previous
attorney]?
 
[Jacobs]: And as I understand, the day I didn't get here, they said
somebody stood up and said I'm in the habit of doing this, which that's not
true.
 
[Prosecutor]: That wasn't the question. You were getting pretty close
to trial, were you not, before Mr. Verschoyle got out? That week, or shortly,
within a couple or three weeks of trial, were you not, on your theft charge? 
You don't know?
 
[Jacobs]:No, sir.
 
[Prosecutor]: Well, since you brought up "in the habit of it," you've
missed court a few times in the past, have you not?
 
[Jacobs]: One other time. I've never had a bond forfeiture.
 
[Prosecutor]: Never? So if the computer says you've missed
seventeen times, it's wrong?
 
[Jacobs]: Yes, sir.

The trial court did not err in allowing the State to introduce evidence of Jacobs' other
failures to appear and bond forfeitures.
          Finally, Jacobs contends that he established as a matter of law that he had a
reasonable excuse for his failure to appear.
          Jacobs testified and admitted he knew he was required to attend court on the
underlying charge on June 16, 2003, at 1:00 p.m. Jacobs testified that on that day he had
no vehicle because his truck was impounded by the police department. He was in Atlanta,
some fifteen miles from the courthouse in Linden. He said he left Atlanta at 9:30 a.m.
walking on Highway 59 toward Linden trying to hitch a ride. He got one ride, but it took him
only a short distance. He was unable to get any other ride. He said he made six telephone
calls, three to the district clerk's office and three to the district attorney's office, to tell them
he could not get there.
          However, Jacobs admitted and there was undisputed testimony from Juanita
Watson, Jacobs' bond maker, that Watson and Jacobs had a longstanding relationship,
Watson regularly made bonds for Jacobs, and if he ever needed a way to get to court, she
would come get him and take him. Jacobs knew he could call Watson at any time and get
a ride to court. Jacobs admitted, however, and Watson testified, that he did not try to
contact Watson to get her to take him to court, although he had ample advance notice of
the court setting to contact her and get a ride. Furthermore, he testified that he did not
telephone the court or district attorney's offices until around three o'clock the afternoon of
his appearance day, some two hours after the scheduled time for his appearance.
          Considering all this evidence, it is clear that Jacobs did not establish as a matter of
law that he had a reasonable excuse for failing to appear. Nor is the trial court's finding
that he had no reasonable excuse against the great weight and preponderance of the
evidence.
 

          For the reasons stated, we affirm the judgment of the trial court.
 

                                                                           William J. Cornelius*
                                                                           Justice

Date Submitted:      May 31, 2005
Date Decided:         July 27, 2005

Publish

*Chief Justice, Retired, Sitting by Assignment