In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00133-CR


______________________________




LAMAR ANTHONY, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Rusk County, Texas


Trial Court No. 2004-09-518CR




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Lamar Anthony, Jr., was convicted by a Rusk County jury for trespassing in a city
park. The City of Henderson has an unwritten policy delegating to its police officers the
authority to ban persons from public parks at the officers' discretion. (1) Shortly after being
given notice to remain out of Yates Park (2) by Police Sergeant Bryan Pool, Anthony was
observed by Officer Chad Bradley, also a Henderson police officer, in the parking lot
adjoining Yates Park. When Bradley informed Pool of his observation, Pool arrested
Anthony for criminal trespass. The information filed, charging Anthony with that
misdemeanor offense, alleged that Anthony trespassed on property owned by Greg Smith,
the city manager of Henderson. After the jury found Anthony guilty, the trial court assessed
punishment at ten days' confinement in the county jail. 

 Anthony appeals, raising four points of error. In his first point, Anthony contends the
trespass policy of Henderson, on its face, violates the Due Process Clause of the United
States Constitution. He contends, in his second and third points, that the trespass policy
is both facially unconstitutional and unconstitutional as applied because it violates the First
Amendment to the United States Constitution. Last, Anthony contends the evidence is
legally and factually insufficient because the State failed to prove Smith owned Yates Park. 

 We will first address Anthony's allegation that the unwritten policy violates the Due
Process Clause. Although we reject Anthony's substantive due-process argument, we
agree the unwritten policy violates procedural due process and is unconstitutionally vague. 
Because the unwritten policy violates the Due Process Clause, we find it unnecessary to
determine whether the policy also violates the First Amendment, either facially or as
applied to Anthony. We then address the sufficiency of the evidence and conclude that,
even if the State was required to prove ownership of Yates Park, the evidence that Greg
Smith had a greater right of possession was sufficient. But because the unwritten policy
is unconstitutional, Anthony had effective consent to be at the park during its regular hours
of operation. Therefore, the evidence is legally insufficient to support Anthony's conviction
for criminal trespass. 

I. Factual Background

 The evidence showed that, after information was received that Derek Anthony, (3) a
suspect wanted on felony drug charges, was "in a vehicle that was inside Yates Park,"
several members of the Henderson Police Department were dispatched to that location. 
Apparently, at about the same time, Anthony rode with his cousin, Chris Hill, to Yates Park
where they intended to play basketball. Officer Amber Tyson detained Hill's vehicle in the
parking lot of the park just before Pool arrived. 

 Pool testified that, when he arrived at the scene, Anthony was engaged in a
conversation with Tyson and was "being a little loud" and did not appear to be willing to
cooperate. According to Pool, Anthony was "making a statement, such as, . . . 'ya'll are
always coming down here in our park harassing us and picking on us. Why can't ya'll just
leave us the fuck alone and go to Lake Forest Park and do something over there.'" 
Because a crowd of approximately ten to fifteen people had gathered, Pool testified he was
becoming concerned for the safety of the officers. Pool also testified that Anthony was
interfering with the officers' search for the suspect and that he felt Anthony may have been
creating a diversion to allow the suspect to escape. Pool further testified he turned toward
Anthony and "explained to him, '[l]ook, this is a city park. I am a representative of the City. 
Therefore, I have a right to say who comes in this park and who doesn't come in this park.'" 
Pool testified that, because of his past experience with Anthony, he did not believe
Anthony respected authority or understood what he had just said, so he told him: "You get
your ass out of this park and you don't come back. If you do, I will take you to jail." 

 On cross-examination, Pool admitted he told Anthony to leave the park after
Anthony had informed Hill that the police did not have a warrant to search his car. Pool
denied, however, that he told Anthony to leave the park because Anthony had advised Hill
of his legal rights. Pool further testified that, when a person receives what the City
describes as a "criminal trespass warning," there is no set time limit for that warning to
expire, and it is effective "from now on." 

 Anthony and Hill testified to a similar, although slightly different, series of events. 
Anthony denied being loud when conversing with Tyson and, in fact, denied even talking
to Tyson. Hill testified that Tyson merely requested to see Hill's driver's license and proof
of insurance. Anthony testified that, when Pool requested to look in the car's trunk, he
asked Pool, "What do you want to search the car for?" According to Anthony, Pool
responded, "That's none of your business, you need to get out of my park." 

 Approximately ten to fifteen minutes later, the police department received an
anonymous call that Derek was possibly in a truck that was in Yates Park. Police officers
were again dispatched to the park. There, Officer Bradley detained a pickup truck in the
middle of the parking lot of the park. The driver of that truck was Stephanie Anthony. 
Bradley testified Anthony was in the truck when Bradley initiated contact with Stephanie. 
Stephanie testified that, just before she was detained by Bradley, Anthony had gotten in
the truck with her and she intended to drive him home. However, when Bradley arrived,
Anthony exited the truck and left the park. Because Bradley was not aware Anthony had
been given a warning to remain out of the park, he let Anthony leave. 

 When Pool arrived in response to the second call, he observed Anthony standing
in the entrance to the parking lot of Yates Park. Anthony was in the process of getting into
Hill's car. Pool detained Anthony and then asked Bradley whether Anthony had been in
the park. Bradley confirmed that he had, and Pool then arrested Anthony. Pool testified
that, because he was not certain where the property line of the park was located, he did
not personally observe Anthony in the park. (4) It is uncontested that Anthony was at the park
during the park's regular hours of operation. (5)

 Smith testified Yates Park is owned by the City of Henderson. Although Smith
testified he did not personally own the park, he did testify the City of Henderson has a
greater right of possession than Anthony and that he (Smith) manages all "day to day
operations" of the City. Smith also testified he had delegated to the city police officers the
authority to issue what the City describes as "criminal trespass warnings." The City's
unwritten policy delegates to individual officers the authority to issue warnings, banning
individuals from the park. The determination of who is banned is made on a case-by-case
basis and left to the discretion of the individual officer. The City has no written criteria to
guide the officers in exercising their discretion. Smith testified that, if it was brought to his
attention that an officer was being arbitrary or capricious, he would overrule the officer's
decision. (6) When asked whether the appeal procedure was in writing, Smith testified, "[n]ot
to my knowledge." Smith also testified he has never had anyone "appeal" a warning. 

II. The Unwritten Policy Violates the Due Process Clause

 The Due Process Clause of the United States Constitution provides that a State
shall not "deprive any person of life, liberty, or property, without due process of law." U.S.
Const. amend. XIV. When an attack on the constitutionality of a statute or regulation is
presented for determination, we begin with the presumption that the statute or regulation
is valid. See Ex parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); Morris v.
State, 833 S.W.2d 624, 627 (Tex. App.--Houston [14th Dist.] 1992, pet. ref'd). A party
challenging a statute on the basis that the statute violates the Due Process Clause of the
Fourteenth Amendment bears the burden of demonstrating the scheme's
unconstitutionality. Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189, 198 (2001);
Granviel, 561 S.W.2d at 511. 

 Before we can delve into the merits of Anthony's due-process arguments, we must
first decide two preliminary issues. First, we must decide whether the due-process
arguments are preserved. After concluding that a facial due-process challenge can be
raised for the first time on appeal, we will address whether Anthony had a protected liberty
or property interest in Yates Park. Delving into the merits, we then address whether the
unwritten policy violates substantive due process, is unconstitutionally vague, or violates
procedural due process.

 A. Facial Challenge Can be Raised for the First Time on Appeal

 The State contends Anthony failed to preserve error on his due-process argument. 
After the State rested, and again at the conclusion of trial, Anthony requested a directed
verdict. (7) Although Anthony did challenge the constitutionality of the unwritten policy, the
State contends Anthony failed to advance the same due-process arguments raised on
appeal. Anthony's due-process argument, though, only presents a facial challenge to the
City's criminal trespass rule. An appellant does not waive error if he or she fails to raise
a facial constitutional challenge to a statute at trial. Briggs v. State, 789 S.W.2d 918, 924
(Tex. Crim. App. 1990); Curry v. State, 186 S.W.3d 39, 42 (Tex. App.--Houston [1st Dist.]
2005, pet. ref'd); Bryant v. State, 47 S.W.3d 80, 84 (Tex. App.--Waco 2001, pet. ref'd);
see Rabb v. State, 730 S.W.2d 751, 752 (Tex. Crim. App. 1987). A facial challenge claims
that a statute is "invalid in toto -- and therefore incapable of any valid application." Steffel
v. Thompson, 415 U.S. 452, 474 (1974). Even if Anthony failed to argue to the trial court
that the unwritten policy violated the Due Process Clause, Anthony can still raise a facial
challenge to the unwritten policy on appeal. 

 B. There is a Protected Liberty or Property Interest

 Both substantive and procedural due process require a protected liberty or property
interest to be deprived by state action. The first inquiry in every due-process challenge is
whether the complaining party has been deprived of a protected interest in "property" or
"liberty." See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999); Mathews v.
Elridge, 424 U.S. 319, 332 (1976). The United States Supreme Court has held that "the
right of locomotion, the right to remove from one place to another according to inclination,
is an attribute of personal liberty." Williams v. Fears, 179 U.S. 270, 274 (1900); see
Papachristou v. Jacksonville, 405 U.S. 156, 164 (1972); Kent v. Dulles, 357 U.S. 116, 126
(1958); Johnson v. City of Cincinnati, 310 F.3d 484, 498 (6th Cir. 2002) (Constitution
protects right to travel locally through public spaces and roadways). Anthony argues he
has both a liberty and property interest in Yates Park. Regardless of whether Anthony had
a property interest in Yates Park as a member of the public, Anthony clearly had a liberty
interest in the park. However, Anthony's liberty interest, as explained below, is not a
fundamental right.

 C. The Unwritten Policy Does Not Violate Substantive Due Process

 In a substantive due-process analysis, we determine (1) whether the plaintiff had
a protected liberty interest, and (2) if the government deprived him or her of that interest
capriciously and arbitrarily. See Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Dallas
County v. Gonzales, 183 S.W.3d 94, 111 (Tex. App.--Dallas 2006, no pet.). Anthony
argues that the policy denies a fundamental right. Denial of a fundamental right would
require a compelling governmental interest. However, if there is no fundamental right,
substantive due process merely requires a rational relationship between the regulation and
the right being destroyed. 

 1. There Is No Fundamental Right

 If a fundamental right is involved, the State must show a compelling interest. 
Substantive due process forbids the government to infringe certain "fundamental" liberty
interests at all, no matter what process is provided, unless the infringement is narrowly
tailored to serve a compelling state interest. See, e.g., Collins v. Harker Heights, 503 U.S.
115, 125 (1992); Bowers v. Hardwick, 478 U.S. 186, 191 (1986). Anthony contends the
unwritten policy deprives him of his constitutional rights of free speech, freedom of
association, and right to travel. In addition, Anthony contends the freedom to loiter or
associate for innocent purposes is part of the liberty protected by the Due Process Clause.

 Anthony has failed to cite controlling authority that his liberty interest in the park is
a "fundamental right." Anthony does cite Fears, 179 U.S. at 274; Papachristou, 405 U.S.
at 164; and Kent, 357 U.S. at 126, for this proposition. However, merely having a liberty
or property interest guaranteed by the Constitution is not equivalent to having a
fundamental right. Not all rights secured by the Federal Constitution are fundamental
rights but, only "those which lie at the heart of the relationship between the individual and
republican form of nationally integrated government." 16A Am. Jur. 2d Constitutional
Law § 397 (1998) (citing Kalodimos v. Vill. of Morton Grove, 470 N.E.2d 266 (Ill. 1984)). 

 We note that, in a plurality decision of the United States Supreme Court, Justices
Stevens, Ginsburg, and Souter suggested that the freedom to loiter for innocent purposes
is a fundamental right. See Chicago v. Morales, 527 U.S. 41, 53-54, n.20 (1999)
(Stevens, J., joined by Souter, J., and Ginsburg, J.) (plurality of United States Supreme
Court held: "Freedom to loiter for innocent purposes is part of the 'liberty' protected by the
Due Process Clause" and suggesting there is fundamental right to loiter for innocent
purposes). However, a plurality opinion has limited precedential value. See Moore v.
State, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). While we agree, as discussed above, that
Anthony had a liberty interest in the park, we are not convinced Anthony had a
fundamental right to use the park. See Cent. Tex. Nudists v. County of Travis, No.
03-00-00024-CV, 2000 Tex. App. LEXIS 8136 (Tex. App.--Austin 2000, pet. denied) (not
designated for publication) (age restriction on clothing-optional public park did not violate
fundamental right); see also Doe v. City of Lafayette, 377 F.3d 757, 772 (7th Cir. 2004)
(convicted sex offender had no fundamental right to loiter in public park). 

 2. Policy Is Constitutional Under the Rational Relationship Test

 The State argues that the policy has a rational relationship to the right being denied. 
The test of whether a regulation which does not affect a fundamental right violates
substantive due process is whether the government was acting in pursuit of permissible
state objectives and, if so, whether the means adopted were reasonably related to
accomplishment of these objectives. Reno v. Flores, 507 U.S. 292 (1993); Littlefield v.
Forney Indep. Sch. Dist., 268 F.3d 275, 291 (5th Cir. 2001); Simi Inv. Co. v. Harris County,
236 F.3d 240 (5th Cir. 2000). Maintenance of order in a public park is a legitimate state
objective, and there is a rational relationship between a policy allowing exclusion from the
park of individuals who breach the peace and the maintenance of order in a public park. 
The regulation does not violate substantive due process.

 D. Policy Is Unconstitutionally Vague

 Also included in due process is the vagueness doctrine. Anthony argues the
unwritten policy is inherently vague and the "vague statutory language permits selective
law enforcement." There is also a denial of due process where inherently vague statutory
language permits selective law enforcement. Smith v. Goguen, 415 U.S. 566, 576 (1974). 
In order to satisfy constitutional due-process requirements, the statute or regulation must
provide adequate notice of the required or prohibited conduct. Freeman United Coal
Mining Co. v. Fed. Mine Safety & Health Review Comm'n, 108 F.3d 358, 362 (D.C. Cir.
1997); see Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); Papachristou, 405 U.S.
at 162; State v. Holcombe, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). Although the
regulation must give fair warning--in light of common understanding and practices--of the
prohibited conduct, the regulation is not required to be mathematically precise. Grayned,
408 U.S. at 110; Ex parte Anderson, 902 S.W.2d 695, 698 (Tex. App.--Austin 1995, pet.
ref'd). The regulation, though, must be defined with "sufficient definiteness that ordinary
people can understand what conduct is prohibited and in a manner that does not permit
arbitrary and discriminatory enforcement." Holcombe, 187 S.W.3d at 499. 

 The unwritten policy at issue here is not premised on a violation of specific park
rules. The policy delegates complete discretion to the police officer, and there are no
guidelines for the exercising of that discretion. (8) A reasonable person would not have fair
warning of what conduct would violate that regulation. Not only are the policy's prohibitions
not clearly defined, the policy presents substantial risk of arbitrary and discriminatory
enforcement. While there is no evidence Pool used this policy in a discriminatory manner,
the policy presents significant risk it could be used in such a manner. The unwritten policy
is unconstitutionally vague.

 E. The Unwritten Policy Violates Procedural Due Process

 In addition, Anthony contends the unwritten policy violates his right to procedural
due process. At a minimum, due process requires a person who may be deprived of a
liberty or property interest to be provided notice and an opportunity to be heard at a
meaningful time and in a meaningful manner. Mathews, 424 U.S. at 333; Univ. of Tex.
Med. Sch. v. Than, 901 S.W.2d 926, 930 (Tex. 1995); see Zinermon v. Burch, 494 U.S.
113, 127 (1990); cf. Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001) (due course of law
under the Texas Constitution). Anthony contends the policy of the City, which allows police
officers to exercise unfettered discretion to ban persons from public property intended for
use by the general public, is a violation of the right to procedural due process. 

 In analyzing a claim of deprivation of procedural due process, we apply a two-part
test: (1) whether the plaintiff had a liberty or property interest entitled to procedural due
process; and (2) if so, what process is due. Logan v. Zimmerman Brush Co., 455 U.S.
422, 428 (1982); Than, 901 S.W.2d at 929. In determining what process is required, we
utilize a flexible standard that depends on the practical requirements of the circumstances. 
Mathews, 424 U.S. at 334; Than, 901 S.W.2d at 930. 

 This flexible standard includes three factors: (1) the private interest that will
be affected by the official action; (2) the risk of an erroneous deprivation of
such interest through the procedures used, and the probable value, if any,
of additional or substitute procedural safeguards; and (3) the government's
interest, including the function involved and the fiscal and administrative
burdens that the additional or substitute procedural requirement would entail. 


Than, 901 S.W.2d at 930; see Mathews, 424 U.S. at 335. 

 The State argues the City has properly delegated authority to police officers and it
must be presumed, in the absence of evidence to the contrary, that the officers are
expected to exercise that discretion within the bounds of their duties under Article 2.13 of
the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 2.13 (Vernon
2005). However, a police officer's exercise of duties and powers under that provision must
be pursuant to policies and procedures that do not violate the due process of law. Here,
the City's unwritten policy includes no guidelines to the police officer in exercising his or her
discretion to ban a person from the park, and it contains no guidelines or procedures for
the "appeal" process. As such, it is procedurally deficient and denies due process. 

 Further, under the unwritten policy, the decision to exclude a person from the park
is made before the person has a chance to present any evidence in his or her favor and
without any evidence being presented against him or her. Due process is ordinarily absent
if a party is deprived of his or her property or liberty without evidence having been offered
against him or her in accordance with established rules. In re Application of Eisenberg,
654 F.2d 1107, 1112 (5th Cir. 1981). Further, due process ordinarily includes the right to
confront witnesses. Wolff v. McDonnell, 418 U.S. 539, 559 (1974); but see Brock v.
Roadway Express, Inc., 481 U.S. 252, 262 (1987). Most important, due process requires
a neutral and detached hearing body or officer. Gagnon v. Scarpelli, 411 U.S. 778, 786
(1973). 

 The State argues, without citing any authority, that, because Anthony was arrested
less than fifteen minutes after receiving the warning, Anthony's due-process rights were
not violated. The State further argues that the appeal process satisfies any possible due
process concerns. In some circumstances, the United States Supreme Court has held that
a statutory provision for a post-deprivation hearing, or a common-law tort remedy for
erroneous deprivation, satisfies due process. Zinermon v. Burch, 494 U.S. 113, 128
(1990). "[W]here a State must act quickly, or where it would be impractical to provide
predeprivation process, postdeprivation process satisfies the requirements of the Due
Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). Even if it would be
impractical to provide predeprivation process, the City's appeal process is not adequate. 
While a temporary order pending a hearing may be adequate, (9) the decision in this case is
a final ex parte determination. An appeal is inadequate because the decision has already
been made without the ability to present evidence for or against the deprivation. An appeal
will not cure the failure to provide a neutral and detached adjudicator. Ward v. Monroeville,
409 U.S. 57, 61 (1972). Further, Anthony was not informed of the appeal procedure. 
While Pool did not explicitly state his decision was final, his statements left an impression
of finality. Pool, himself, testified he viewed the decision as effective from that point on. 
Last, there are no procedures in the appeal process for the presentation of evidence for
or against a violation. 

 After weighing the three factors, we conclude the City's unwritten policy does not
meet the requirements of procedural due process. Although the fiscal and administrative
burdens may weigh against a due-process violation, this factor is greatly outweighed by the
other factors. Due process requires state procedures to provide proper procedural
safeguards before a claimant's property or liberty interest is destroyed. See Thoyakulathu
v. Brennan, 192 S.W.3d 849, 854 (Tex. App.--Texarkana 2006, no pet.). The unwritten
policy fails to provide an opportunity to be heard at a meaningful time and in a meaningful
manner. The policy does not provide for a hearing or a neutral magistrate. Under the
unwritten policy, a person is deprived of his or her property or liberty without evidence
having been offered against him or her or the opportunity to present evidence on his or her
own behalf. "The Due Process Clause of the Fourteenth Amendment was intended to
prevent government 'from abusing [its] power, or employing it as an instrument of
oppression.'" DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196
(1989). Although there is no evidence Pool intended to exercise his discretion in an
oppressive manner, the unwritten policy contains insufficient checks to prevent such
discretion from being exercised in an oppressive manner. The unwritten policy fails to
afford procedural due process.

 F. The Unwritten Policy Is Not Susceptible to a Narrowing Construction 

 If a reasonable construction can be ascertained which will render the statute
constitutional, we must uphold the statute. Ely v. State, 582 S.W.2d 416, 419 (Tex. Crim.
App. 1979); Ex parte Anderson, 902 S.W.2d 695, 698 (Tex. App.--Austin 1995, pet. ref'd);
State v. Fry, 867 S.W.2d 398, 400 (Tex. App.--Houston [14th Dist.] 1993, no pet.). If a
statute is "susceptible to a narrowing construction consistent with its language and
apparent purpose," the statute should not be invalidated. Olvera v. State, 806 S.W.2d 546,
552 (Tex. Crim. App. 1991). "However, a court may not assume the legislative prerogative
and rewrite a statute in order to save it if the statute is not readily subject to a narrowing
construction." Id. Without completely rewriting the policy, there is no reasonable
interpretation of the unwritten policy that would be constitutional. We are unable to sever
the unconstitutional portion of the unwritten policy, and the unwritten policy is not
susceptible to a narrowing construction. 

 G. Summary

 We reject the State's argument that Anthony was required to raise due process at
the trial court level and hold that Anthony had a protected liberty interest in Yates Park. 
Although we reject Anthony's argument that the unwritten policy violates substantive due
process, we conclude the unwritten policy fails to meet the requirements of procedural due
process and is unconstitutionally vague. We sustain Anthony's first point of error. (10) 

III. The Evidence Is Legally Insufficient

 Anthony also alleges that the evidence is legally and factually insufficient to support
a conviction for criminal trespass. He contends that there was no evidence the park was
owned by Smith and that the concept of a "greater right to possession" does not apply to
criminal trespass. See, e.g., Palmer v. State, 764 S.W.2d 332, 334 (Tex. App.--Houston
[1st Dist.] 1988, no pet.). In reviewing the legal sufficiency of the evidence, we view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Although we
reject Anthony's argument that the State failed to prove ownership of the park, the
evidence is legally insufficient because Anthony had effective consent to be in the park.

 A. Proof of a Greater Right of Possession Is Sufficient

 Under the Texas Penal Code, the offense of criminal trespass does not require the
State to prove ownership of the property trespassed on, but merely requires proof the
property belonged to "another." Tex. Penal Code Ann. § 30.05(a) (Vernon Supp. 2006). 
In this case, though, the State alleged in the information that Smith owned the property
being trespassed on. Anthony contends that the State was required to prove this allegation
and that the State's proof of a greater right of possession is insufficient. 

 The Texas Court of Criminal Appeals has held the phrase "the owner thereof" may
be substituted for the statutory word "another." State v. Kinsey, 861 S.W.2d 383, 384
(Tex. Crim. App. 1993). Assuming the State was required to prove Smith was the owner, (11)
proof of a greater right of possession is sufficient. The Texas Court of Criminal Appeals
has also held the definition of "owner" under the former subsection 1.07(a)(24) (12) of the
Texas Penal Code is applicable to trespass cases where the State alleges ownership. 
Langston, 855 S.W.2d at 720 n.7; Arnold, 867 S.W.2d at 379. Therefore, in criminal
trespass cases where the State alleges ownership, subsection 1.07(a)(35), the current
section, is applicable and the State may establish ownership by proving, beyond a
reasonable doubt, that the complainant had a greater right to possession of the property
than  the  defendant.  See  Arnold,  867  S.W.2d  at  379;  see  also  Tex.  Penal  Code
Ann. § 1.07(a)(35). The State introduced evidence that Smith had a greater right of
possession. Thus, the evidence of ownership is sufficient even if the State was required
to prove ownership.

 B. Anthony Had Effective Consent To Be in the Park

 The State contends Pool's authority to exclude persons from the park is not relevant
to the validity of the criminal trespass conviction. We disagree. Because Pool lacked
authority to exclude a person from the park, the evidence is legally insufficient to support
the effective consent prong of criminal trespass. Section 30.05 of the Penal Code
provides:

 (a) A person commits an offense if he enters or remains on or in property,
including an aircraft or other vehicle, of another without effective consent or
he enters or remains in a building of another without effective consent and
he:

 (1) had notice that the entry was forbidden; or 

 (2) received notice to depart but failed to do so.


Tex. Penal Code Ann. § 30.05(a). As discussed above, the unwritten policy violates the
Due Process Clause. Pool's authority to exclude Anthony from the park is based solely on
the unwritten policy. Because the unwritten policy is void, Pool lacked authority to exclude
Anthony from the park under this policy. Thus, Anthony, as a member of the public, had
effective consent to be in the park during the ordinary hours of operation. The evidence
is legally insufficient. 

IV. Conclusion

 Although the City's unwritten policy does not violate substantive due process, the
policy clearly violates procedural due process and is unconstitutionally vague. Because
the unwritten policy of the City of Henderson gives police officers unfettered discretion to
determine who should be excluded from Yates Park and fails to provide for any hearing,
the policy, on its face, violates procedural due process. Further, the unwritten policy is
unconstitutionally vague since the policy fails to give adequate notice of what conduct is
prohibited. Because the unwritten policy relied on by Pool is unconstitutional, Pool lacked
authority to ban Anthony from Yates Park under such policy. The evidence, therefore, is
legally insufficient to support a conviction for criminal trespass. 

 For these reasons, we reverse the judgment of conviction and render a judgment
of acquittal.



 Donald R. Ross

 Justice


Date Submitted: October 4, 2006

Date Decided: November 30, 2006


Publish
1. Under the Texas Local Government Code, the City of Henderson has the authority
to adopt rules concerning the management of a park owned by the city. Section 331.007
of the Local Government Code provides that parks "shall be open for the use of the public
under rules prescribed by the governing body of the park . . . ." Tex. Loc. Gov't Code Ann.
§ 331.007 (Vernon 2005); see also Tex. Loc. Gov't Code Ann. § 331.005 (Vernon 2005). 
For the purposes of this appeal, we will assume the unwritten policy qualifies as a rule
under the Local Government Code.
2. Yates Park is a public park owned by the City of Henderson.
3. We refer to Lamar Anthony by his surname, Anthony. But because there are two
other Anthonys--Derek and Stephanie--in this Factual Background, we refer to them
(beyond their first mention) by their given names. Pool testified Derek was either a cousin
or a brother to Anthony. Anthony referred to Stephanie as his aunt. 
4. We note that Anthony contends his arrest was illegal because Pool did not
personally observe Anthony in the park. See Tex. Code Crim. Proc. Ann. art. 14.01
(Vernon 2005); see also McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). 
It is unnecessary for us to determine whether a warrantless arrest was permissible. Even
if the arrest was illegal, an acquittal is not required. It has long been the rule in Texas that
an illegal arrest does not render a conviction void where the conviction is not tainted by the
illegality of the arrest. Johnson v. State, 548 S.W.2d 700, 706 (Tex. Crim. App. 1977);
Frazier v. State, 481 S.W.2d 857, 859 (Tex. Crim. App. 1972); Brennan v. State, 140
S.W.3d 779, 780 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd). The appropriate
sanction for an illegal arrest is the exclusion of evidence associated with that illegal arrest. 
Brennan, 140 S.W.3d at 780. Anthony does not contend there is any evidence which
should have been suppressed due to the allegedly illegal arrest.
5. Pool testified the hours of Yates Park were 7:00 a.m. to midnight. He further
testified that he issued the warning at approximately 5:57 p.m. The record is not clear
when Anthony was arrested, but the State contends it was approximately fifteen minutes
after receiving the warning to stay out of the park.
6. Pool testified he never informed Anthony he could appeal Pool's decision to the city
manager. 
7. In addition, Anthony filed a motion for judgment notwithstanding the verdict
(j.n.o.v.). All of Anthony's issues are preserved in his motion for j.n.o.v., but, as the State
correctly points out, a motion for j.n.o.v. is not available in criminal cases. See Tex. Code
Crim. Proc. Ann. art. 42.01, § 1(7) (Vernon Supp. 2006); State v. Savage, 933 S.W.2d
497, 499 (Tex. Crim. App. 1996); Dunn v. State, 176 S.W.3d 880, 885 (Tex. App.--Fort
Worth 2005, no pet.). Further, the substance of the motion does not indicate it should be
construed as a motion for new trial. 
8. The State cites Allen v. State, No. 12-01-00079-CR, 2003 Tex. App. LEXIS 2188
(Tex. App.--Tyler Mar. 12, 2003, no pet.) (mem. op., not designated for publication)
(apartment complex parking lot), and State v. Jackson, 849 S.W.2d 444, 446 (Tex.
App.--San Antonio 1993, no pet.) (apartment complex), for the proposition that a property
owner may delegate to security guards or other agents the authority to deny entry to
property. Because these cases involve private property, they are clearly distinguishable. 
9. We note a person may be banned, without a court-ordered injunction, from a public
park under the care and control of the Texas Department of Parks and Wildlife for up to
forty-eight hours. See Tex. Parks & Wildlife Code Ann. § 13.108 (Vernon 2002). 
10. We note that Smith testified the unwritten policy in this case is substantially similar
to the City of Henderson's trespass policy for property owned by the housing authority. We
emphasize that this opinion does not decide the constitutionality of the City's trespass
policy for property owned by the housing authority. We also emphasize this opinion does
not decide whether a police officer could constitutionally order a person interfering with his
or her duties to disperse. This opinion is limited to the constitutionality of the City's policy
which allows a police officer to permanently ban a person from a public park at the officer's
unfettered discretion.
11. We note the State contends it was not required to prove ownership. The Texas
Court of Criminal Appeals has held, when the State alleges an owner of the
property--which is not a necessary allegation to prove the offense of criminal
trespass--the State is required to prove that allegation. Langston, 855 S.W.2d 718, 721
(Tex. Crim. App. 1993); see also Arnold v. State, 867 S.W.2d 378, 379 (Tex. Crim. App.
1993) (trespass at courthouse). However, since Langston and Arnold were decided, the
Texas Court of Criminal Appeals has mandated sufficiency of the evidence must be
analyzed under the hypothetically correct jury charge. Gharbi v. State, 131 S.W.3d 481,
483 (Tex. Crim. App. 2003) (allegation which is not statutory element or "an integral part
of an essential element of the offense" does not have to be included in hypothetically
correct jury charge); see Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002)
(allegation which is not statutory element does not have to be included in hypothetically
correct jury charge); see also Gollihar v. State, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001)
(explicitly overruling surplusage law and Burrell exception). However, it is not necessary
for us to determine what impact, if any, the hypothetically correct jury charge doctrine has
on the holdings of Langston and Arnold. 
12. In 1993, the Legislature renumbered the former subsection 1.07(a)(24) as
subsection 1.07(a)(35) without a substantive change to the text of the subsection. See Act
of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3589 (codified at
Tex. Penal Code Ann. § 1.07(a)(35) (Vernon Supp. 2006).



ps friends in
the past.  But, on December 17, 2008,
Johnson shot and killed Robinson. 
Johnson was convicted by a jury for Robinsons murder and was sentenced
to imprisonment for a period of ninety-nine years and fined $10,000.00.  We affirm the trial courts judgment.

I.          FACTUAL BACKGROUND

 

            Johnson testified on his own
behalf and gave the following account: 
Robinson called Johnson twice on the day Robinson was killed.  When told by Johnson to stop calling,
Robinson announced that he was outside Johnsons house.  Johnson was alarmed because he did not give
Robinson his telephone number and had moved to a new home.  Johnson went outside and saw Robinson walking
into his yard.  When asked by Robinson
why Johnson had been ignoring him, Johnson replied that he did not want to
speak with Robinson and turned to go back in the house.[1]  At that point, Robinson grabbed Johnsons
wrist; Johnson pulled his wrist free, asked Robinson to leave, and went back
inside.  Robinson refused to leave.  Alarmed at Robinsons refusal to leave,
Johnson retrieved a gun from his mothers room and placed it in his coat
pocket.  When Johnson emerged from his
home, Robinson was still outside and stated that he needed a few minutes to
speak with Johnson.  Johnson agreed, and
the two met in a wooded area down the street from Johnsons house.  Robinson and Johnson conversed in the front
seat of Robinsons vehicle; Robinson indicated he had feelings for Johnson, and
Johnson indicated that he wanted Robinson to leave him alone.  During the course of this conversation,
Johnson pulled the gun out of his jacket in order to frighten Robinson and in
order to emphasize the point that he wanted Robinson to leave him alone.  After that, both Johnson and Robinson exited
the vehicle, and Johnson began walking back to his car.  In the meantime, Robinson opened the back of
his vehicle and was scrambling through some clothes or something in the back.  Robinson then told Johnson that he was going
to kill Johnson and his family.  Johnson
was looking at Robinson out of the corner of his eye and saw Robinsons arm
raised.  When Johnson turned around, he
saw Robinsons arm go up and saw something in his hand, which he believed to be
a gun.[2]  Johnson panicked and accidentally fired at
Robinson, killing him.   Johnson fled,
only to be arrested for Robinsons murder several months later.  

II.        ANALYSIS

 

            On appeal, Johnson
claims the jury in his case was not properly sworn, in violation of his right
to a trial by jury under the United States and Texas Constitutions.  Johnson further claims the punishment charge
presents fundamental error because it permitted the jury to reject a finding of
sudden passion, in the absence of unanimity, in violation of Article 37.07,
Section 3(c) of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 37.07, § (3)(c) (Vernon Supp. 2010).  We will examine each of Johnsons issues in
turn.

 

 

            A.        Jury
Oath

 

            In his first
three appellate points, Johnson claims that even though the record reflects the
clerk read the oath to the jury, the jury never assented to the oath and thus
was not sworn.  This, claims Johnson, is
a violation of (1) Article 35.22 of the Texas Code of Criminal Procedure; (2)
his right to trial by jury under the United States Constitution; and (3) his
right to trial by jury under the Texas Constitution.  

            Article
35.22 of the Texas Code of Criminal Procedure provides:

 

When the jury has been selected, the following
oath shall be administered them by the court or under its direction:  You and each of you do solemnly swear that
in the case of the State of Texas against the defendant, you will a true
verdict render according to the law and the evidence, so help you God.

 

Tex. Code Crim. Proc.
Ann. art. 35.22 (Vernon
2006).  The Texas Rules of Appellate
Procedure create presumptions of regularity in lower court proceedings that
require us to presume, among other things, that the jury was properly impaneled
and sworn.  Tex. R. App. P. 44.2(c). 
We presume the jury was properly impaneled and sworn, unless such matter
was disputed in the trial court or the record affirmatively shows the contrary.
 See
also Osteen v. State,
642 S.W.2d 169, 171 (Tex. Crim. App. 1982); Faison v. State, 59 S.W.3d 230, 237 (Tex. App.Tyler
2001, pet. refd).   Here, there was no
objection to a failure to administer the oath to the jury panel.  Johnson maintains the record affirmatively
demonstrates the jury was not properly sworn because it fails to reflect that
the jury responded in the affirmative to the oath, citing the following
excerpts from the record:

THE
CLERK:             You and each of you do
solemnly swear that in the case of the State of Texas versus Ryan Johnson you
will a true verdict render according to the law and the evidence, so help you
God?

 

THE
COURT:             Please be
re-seated.  Ladies and gentlemen, youve
been given a juror badge . . . .

 

Johnson contends that because an oath is commonly defined[3]
as a solemn usu. formal calling upon God or a god to witness to the truth of
what one says or to witness that one sincerely intends to do what one says,[4]
the oath requires an affirmation or response on behalf of the jurors.  

            The State
contends that the issue of whether the oath was administered has been mooted by
the filing of a supplemental reporters record[5]
which reflects that the clerk read the oath to the jury and that the jury was
sworn as required by Article 35.22 of the Texas Code of Criminal
Procedure.  Given the affirmative showing
in the supplemental reporters record that the jury in Johnsons case was, in
fact, sworn, Johnsons first three points of error are overruled as moot.  See
Wilson v. State, 296 S.W.3d 140, 143 (Tex. App.Houston [14th Dist.] 2009,
pet. refd).  Even if the issue of
whether the jury was sworn in accordance with Article 35.22 was not rendered
moot in this instance, there is no affirmative showing in the record that the
jury oath was not properly administered. 
Therefore, it must be presumed the jury was properly impaneled and
sworn.  See Tex. R. App. P.
44.2(c). 

            B.        Jury
Unanimity

 

            In points of
error four through six, Johnson maintains the punishment charge presents
fundamental error by not requiring jury unanimity in finding no sudden passion in violation of (1) Article
37.07, Section 3(c) of the Texas Code of Criminal Procedure;[6]
(2) the Texas Constitution; and (3) the United States Constitution.  If the jury had found Johnson acted under the
immediate influence of sudden passion[7]
arising from adequate cause[8]
when he killed Robinson, the crime would have been punished as a second-degree
felony rather than a first-degree felony. 
Tex. Penal Code Ann. §
19.02 (Vernon 2003); Trevino v. State, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003); Bradshaw v. State, 244 S.W.3d 490, 494
(Tex. App.Texarkana 2007, pet. refd).  

            A claim of
jury charge error is reviewed under the two-pronged test set forth in Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (op. on rehg), overruled
on other grounds by Rodriguez v. State, 758 S.W.2d 787, 788 (Tex. Crim.
App. 1988).   Under the first prong of
the test, we are to determine whether error exists.  Ngo v.
State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  If error is determined to exist, we must
determine whether sufficient harm resulted from the error to compel
reversal.  Id. at 744.  We initially
evaluate the question of error.

            When the
issue of sudden passion is raised and submitted, the jury must unanimously
agree that the defendant either did or
did not act under the immediate influence of sudden passion arising
from an adequate cause.  Sanchez v.
State, 23 S.W.3d 30, 3334
(Tex. Crim. App. 2000); Newton v. State, 168 S.W.3d 255, 256 (Tex. App.Austin 2005, pet. refd).  This requirement stems from the statutory
requirement that the jury agree unanimously as to both the guilt or
innocence of the defendant and the amount of punishment.  Sanchez, 23 S.W.3d at 33 (quoting Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(c)). 

 

            The jury
charge in this case provided, in pertinent part:

 

The punishment which you may assess is
confinement in the Institutional Division of the Texas Department of Criminal
Justice for life, or for any term of not more than 99 years or less than 5 years;
unless you believe that the defendant caused the death under the immediate
influence of a sudden passion arising from an adequate cause in which event you
may assess confinement for not more than 20 years or less than 2 years.  In addition, in either case, a fine not to
exceed $10,000 may be imposed. 

            .
. . .

 

Now if you believe by a preponderance of the
evidence that the defendant caused the death of the deceased while under the
immediate influence of sudden passion arising from an adequate cause, you will
assess punishment at confinement for not more than 20 years nor less than 2
years and you may impose a fine not to exceed $10,000.

 

In the final paragraph, the charge in this case instructs the
jurors that the verdict must be by a unanimous vote of all members of the
jury.  This charge is virtually
identical to the charge given in Newton,
168 S.W.3d at 258.[9]  The Austin Court of Appeals found this charge
to be erroneous because the instruction did not condition the use of the
five-to-life punishment range on a unanimous finding that the appellant did not act under the influence of sudden
passion.  Id. at 257.  Instead, the
harsher punishment range was made applicable in the absence of a finding in
appellants favor.  Id.  The punishment charge in
the instant case suffers from the same defect; the jury was never instructed
that they were to impose first-degree felony punishment only if they unanimously agreed that Johnson did not act under the influence of sudden passion.  As in Newton,
this charge does not include a unanimity requirement directly relating to the
selection of the proper punishment range, and as in Newton, the charge is erroneous. 


            The
erroneous charge is not salvaged by the verdict forms, which are virtually
identical to those submitted in Bradshaw,
244 S.W.3d 490.[10]  Like Bradshaw,
the verdict forms here do not condition the punishment range on the absence of
a finding.  The verdict forms here, as in
Bradshaw, do not require the jury to
provide an explicit affirmative or an explicit negative ruling on sudden
passion.[11]  The issue of sudden passion is subsumed in
each question.  In Bradshaw, this Court observed that the verdict forms do not prevent
the charge from being erroneous because the jury is not asked to find a lack of
sudden passion, but rather is merely instructed to assess the first-degree
felony punishment range if it does not find Bradshaw acted with sudden passion.  Id.
at 497.  As in Bradshaw, the verdict forms in this case do not prevent the charge
from being erroneous.[12]  

            Here, the
State concedes the punishment charge was erroneous because it theoretically
allowed the jury to make a non-unanimous decision as to sudden passion.  Because Johnson failed to raise his
jury-unanimity objection at trial, we will reverse only if we find the charge
error caused Johnson egregious harm.  See Neal v. State, 256 S.W.3d 264, 278
(Tex. Crim. App. 2008).  Jury charge
error is egregiously harmful if it affects the very basis of the case, deprives
the defendant of a valuable right, or vitally affects a defensive theory.  Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim. App.
2008).  When charge error causes a jury to
render a less-than-unanimous verdict on an issue on which unanimity is
required, the charge error is egregiously harmful.  See Ngo, 175 S.W.3d at 75052; Swearingen v. State, 270 S.W.3d 804, 812
(Tex. App.Austin 2008, pet. refd).  The
egregious harm standard requires a finding of actual, not merely theoretical,
harm to the accused.  Almanza, 686 S.W.2d at 174.  Egregious harm is a difficult standard to
meet and must be determined on a case by case basis.  Ellison
v. State, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).  

            Johnson
contends that charge error has been found to be egregiously harmful by the Texas
Court of Criminal Appeals where there was evidence of a lack of unanimity,
citing Sanchez, 23 S.W.3d at 34.          In this case, unlike Sanchez, in which the defendant
presented evidence that the jury verdict was not unanimous, there is no evidence in this case that the jury
verdict was not unanimous.  Johnson
acknowledges that this Court has previously held that where there is no
evidence of a lack of unanimity by the jury, harm resulting from this type of
an erroneous punishment charge is not egregious.  Bradshaw,
244 S.W.3d at 498.  Johnson nevertheless urges
this Court to follow the holding of the Dallas Court of Appeals in London v. State, 325 S.W.3d 197 (Tex.
App.Dallas 2008, pet. refd).  There,
the punishment charge on sudden passion provided:  An affirmative (yes) answer on the issue
submitted must be unanimous, but if the jury is not unanimous in reaching an
affirmative answer, then the issue must be answered no.[13]
This punishment charge affirmatively directed jurors to make a negative finding
on the issue of sudden passion if they were unable to reach a unanimous
decision on that issue.  

            As in Bradshaw, here (1) there was no
affirmative direction to the jurors to make a negative finding on the issue of
sudden passion in the absence of unanimity, (2) the charge contained a general
instruction that the verdict must be unanimous, and (3) there is no evidence
that the verdict was not unanimous. 
Under these circumstances, the argument that the verdict may not have
been unanimous is theoretical only.  The degree of harm demonstrated by an
appellant must be actual, not merely theoretical.  Almanza, 686 S.W.2d at 174; Bradshaw, 244 S.W.3d at 498.   The
error was not so egregious as to vitally affect a defensive theory or make the
case for conviction or punishment clearly and significantly more persuasive.[14]


III.       CONCLUSION

 

            We affirm
the judgment of the trial court.

 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          January
11, 2011

Date Decided:             January
26, 2011

 

Do Not Publish           

 

 

 

            

 

 

 

 

 

 

 

 

 

 











[1]All
of the witnesses agreed that Robinson was homosexual.  Johnson testified that when he met Robinson,
he thought Robinson was a female because he was dressed in female clothing and
was called Sadera.  After discovering
that Robinson was a gay male, Johnson stated he discontinued seeing
Robinson.  Other witnesses testified that
Robinson and Johnson were romantically involved. 





[2]Robinson
did not have a gun.  The item he was
holding was fingernail polish.  





[3]Article
3.01 of the Texas Code of Criminal Procedure states that words, phrases, and
terms used in the Code are to be taken and understood in their usual
acceptation in common language, except where specially defined.  Tex.
Code Crim. Proc. Ann. art. 3.01 (Vernon 2005).

 





[4]Merriam-Websters Collegiate Dictionary 854
(11th ed. 2003).

 





[5]The
supplemental reporters record reads:

 

THE CLERK:      You and each of you do solemnly swear that
in the case of the State of Texas versus Ryan Johnson you will a true verdict
render according to the law and the evidence, so help you God?

 

                                                (THE JURY WAS SWORN)

 

THE COURT:  Please be re-seated.  Ladies and gentleman, youve been given a
juror badge . . . .

 

 





[6]Article
37.07, Section 3(c) of the Texas Code of Criminal Procedure provides:

 

If the jury finds the
defendant guilty and the matter of punishment is referred to the jury, the
verdict shall not be complete until a jury verdict has been rendered on both
the guilt or innocence of the defendant and the amount of punishment.  In
the event the jury shall fail to agree on the issue of punishment, a mistrial
shall be declared only in the punishment phase of the trial, the jury shall be
discharged, and no jeopardy shall attach.  The court shall impanel another jury as soon
as practicable to determine the issue of punishment.

 

Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(c).

 





[7]Sudden Passion means passion directly caused by and
arising out of provocation by the individual killed or another acting with the
person killed which passion arises at the time of the offense and is not solely
the result of former provocation.  Tex. Penal Code Ann. § 19.02(a)(2)
(Vernon 2003).  

 





[8]Adequate cause means cause
that would commonly produce a degree of anger, rage, resentment, or terror in a
person of ordinary temper, sufficient to render the mind incapable of cool
reflection.  Tex. Penal Code Ann. § 19.02(a)(1). 

 





[9]The
charge in Newton provided:

 

The punishment
which you may assess is confinement in the Institutional Division of the Texas
Dept. of Criminal Justice for life, or for any term of not more than 99 years
or less than 5 years; unless you believe that the defendant caused the death
under the immediate influence of a sudden passion arising from an adequate
cause in which event you may assess confinement for not more than 20 years or
less than 2 years.  In addition, in
either case, a fine not to exceed $10,000 may be imposed.  The burden of proof is on the defendant to
prove this issue by a preponderance of the evidence.

                . . . .

 

Now if you
believe by a preponderance of the evidence that the defendant caused the death
of the deceased while under the immediate influence of sudden passion arising
from an adequate cause, you will assess punishment at confinement for not more
than 20 years nor less than 2 years and you may impose a fine not to exceed $
10,000.

 

Id. at 25657.

 

The final paragraph of the charge in Newton
instructed the jurors to select a foreperson to preside at your deliberations
and to vote with you in arriving at a unanimous verdict.  Id. at 257.

 





[10]The
verdict forms in Bradshaw provided:

 

We, the jury,
having found the defendant, Joe Bradshaw, guilty of murder, do further find
that the defendant murdered Toy Bradshaw while under the immediate influence of
sudden passion arising from an adequate cause and assess his punishment at
confinement for ________ in the correctional Institutions Division of the Texas
Department of Criminal Justice.  (Any
term of not more than 20 years or less than 2 years.)  In addition, we assess a fine in the amount of
$__________. ($0-10,000.00).

                . . . . 

We, the jury,
having found the defendant, Joe Bradshaw, guilty of murder do not find that the
defendant murdered Toy Bradshaw while under the immediate influence of sudden
passion arising from adequate cause and assess his punishment at confinement
for ________ in the correctional Institutions Division of the Texas Department
of Criminal Justice.  (Life or any term
of not more than 99 years or less than 5 years).  In addition, we assess a fine in the amount of
$__________. ($0-10,000.00).

 

Bradshaw,
244 S.W.3d at 496.

 





[11]The
verdict forms in this case provide as follows:

 

We, the jury,
having found the defendant, RYAN PATRICK JOHNSON, guilty of Murder, as charged
in the indictment, assess his punishment at confinement for ____ years in the
Institutional Division of the Texas Department of Criminal Justice.  (Any term of more than ninety-nine years or
life or less than five years.)  In
addition, we assess a fine in the amount of $________.  ($0-$10,000.00).

                . . . .

 

We, the jury,
having found the defendant, RYAN PATRICK JOHNSON, guilty of murder, do further
find the defendant cause [sic] the death of the deceased under the immediate
influence of sudden passion arising from an adequate cause.  We therefore assess his punishment at
confinement for _____ years in the Institutional Division of the Texas
Department of Criminal Justice  (Any term
of not more than 20 years or less than 2 years.)  In addition, we assess a fine in the amount
of $ _______ ($0 - $10,000.00)

 

 





[12]In
Barfield v. State, 202 S.W.3d 912,
917 (Tex. App.Texarkana 2006, pet. refd), this Court held that the submission
of sudden passion as a special issue asking only whether [the jury] found
Barfield acted under the immediate influence of sudden passion in conjunction
with the general unanimity instruction was sufficient to guarantee a unanimous
finding.  Id. at 918.

 





[13]The
punishment charge in London was
identical to the punishment charge in Sanchez,
which charge was determined by the Texas Court of Criminal Appeals to be
erroneous.  London, 325 S.W.3d at 207.

 





[14]The
main defensive theory asserted by Johnson was self-defense.  The jury was instructed on this defensive
theory in the charge submitted to it during the guilt/innocence phase of the
trial.